IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

IVETTE RAMIREZ-ALVAREZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 11-2036 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Ivette Ramírez-Alvarez (hereafter plaintiff "Ramírez-Alvarez") filed this action seeking judicial review of the final decision by defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for a protected period of disability and ensuing disability benefits. (Docket No. 1).[1]

On March 30, 2012, the Commissioner filed his answer to the Complaint with a copy of the administrative record. (Docket Nos. 5 and 6). On May 5, 2012, plaintiff informed, through counsel Salvador Medina De-La-Cruz, the consent to the Magistrate Judge's jurisdiction. (Docket No. 9). The parties thereafter filed their respective memorandum of law. (Docket Nos. 18 and 21).

Upon examination of the pleadings, including a review of the administrative record, and the applicable legal provisions, this Magistrate Judge discusses below the disposition of the pending motions.

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

## BACKGROUND

Plaintiff Ramírez-Alvarez filed an application for a protected period of disability and disability insurance benefits alleging disability beginning on August 3, 2006. The application was initially denied and was also denied on reconsideration. The administrative hearing was held. Then, on February 2, 2010, the Administrative Law Judge (hereafter "ALJ") issued his opinion that, prior to July 6, 2009, plaintiff was not disabled but became disabled on that date and she has continued to be through the date of the decision. Insofar as the date prior to disability, and within the alleged onset date claimed of August 3, 2006, the ALJ denied entitlement to a period of disability for there were jobs which existed in significant numbers within the national economy that Ramírez-Alvarez could perform, for she retained the ability to do all kind of sedentary type of work. Dr. Héctor A. Puig (hereafter "Dr. Puig"), the vocational expert, testified and identified jobs which were available within plaintiff's residual functional capacity, such as sorter/classifier. The Appeals Council denied review.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

On October 24, 2007, plaintiff Ramírez-Alvarez filed her application for disability and ensuing benefits claiming initial disability since August 3, 2006. She remained fully insured through December 31, 2010.

At the requested administrative hearing, Ramírez Alvarez was not present, but the testimony of a vocational expert was heard. (Docket No. 5, Transcript pp. 38-41). The ALJ posed some hypothetical questions as to limitations imposed by plaintiff's conditions to the vocational expert, Dr. Puig. Since the alleged onset date, plaintiff was determined to have

severe impairments to wit, fibromyalgia, osteoarthritis, carpal tunnel syndrome, status post portal vein thrombosis, degenerative disc disease fo the lumbar region of the spine and an affective disorder. These impairments by themselves or in combination were not considered to meet the requirements in the Listing of Impairments. Prior to July 6, 2009, the date the ALJ ruled Ramírez-Alvarez became disabled, she retained the residual functional capacity for sedentary work, except that in view of her mental impairments, these jobs were to be simple, repetitive, having no contact with the public and occasional contact with supervisors and co-workers. (Docket No. 5, Transcript, pp. 22-23). The ALJ concluded, from the medical evidence, that Ramírez-Alvarez did not have an impairment or combination thereof that met the requirements of the Listing of Impairments prior to July 6, 2009. The ALJ acknowledged that plaintiff had complaints of pain and limitations as a result of her physical impairments, but were not substantiated as severe enough to preclude all work related activity. The ALJ noted that, although there was status post lumbar laminectomy at L4 due to herniation, she was able to continue her regular work and she did not generally receive the type of medical treatment one would expect for a totally disabled individual. The magnetic resonance imaging (MRI) of the back was recommended on March 19, 2007 but there was no evidence Ramírez-Alvarez follow through this recommendation. On August 27, 2007, while plaintiff was in pain management evaluation and treatment, she was prescribed Percocet and Oxycontin, but she did not seek further treatment. (*Id.*, pp. 23-24).

A neurological examination by Dr. Alfredo Pérez-Canabal in March 2008 showed no atrophy, motor loss or sensory deficits, gait was adequate and reflexes were normal. Range

of motion of the lumbar spine and major joints was also noted as normal. (*Id.*, pp. 564-566). There were X-rays showing very early discogenic disease at L3-L4 with minimal narrowing. (*Id.*, pp. 24, 574).

The ALJ further considered the mental disorder claimed, with symptoms of depression, manifested by anhedonia, appetite disturbance, feeling of guilt or worthlessness, generalized anxiety, difficulty in thinking and concentrating, psychomotor retardation, sleep disturbances, tension and hallucinations, among others. (Docket No. 5, Transcript, p. 24.). By September 11, 2007, Dr. Ronald Malavé-Ortiz (hereafter "Dr. Malavé-Ortiz") completed a questionnaire stating the patient was markedly limited in her abilities to maintain social functioning and had extreme deficiencies of concentration, persistence and pace. As it seems customary with Dr. Malavé-Ortiz' treatment summary, no progress or treatment notes were included and no specifics or additional information were attached to support his opinion.

The ALJ further considered that other evidence in the record contested Dr. Malavé-Ortiz' reference to plaintiff being with psychomotor retardation by November of 2007, for the patient was found cooperative, alert and oriented during medical examinations. Her thought content was coherent, relevant an logical. (*Id.*, p. 25). There was no evidence Ramírez-Alvarez could not care for family or house work, no evidence of frequent domestic, neighborhood or workplace disputes or indicia of maladaptive behavior in social settings. Plaintiff was able to talk to others, according to her own admissions.

On September 20, 2007, Ramírez-Alvarez was admitted to First Hospital Panamericano for increased symptoms of depression where she was stabilized and

discharged with a diagnosis of depressive disorder. On January 30, 2008, Dr. Armando I. Caro (hereafter "Dr. Caro") conducted a consultative psychiatric examination. Ramírez-Alvarez' mental status was considered unremarkable, without flight of ideas or looseness of association. She could maintain good eye contact and was alert and oriented in the three spheres. Concentration was fair, short term memory was impaired but immediate and recent memory were preserved. The diagnosis included schizo-affective disorder and pain disorder secondary to general medical condition. By March 26, 2009, the ALJ opined plaintiff improved with sustained outpatient health treatment and was assessed with mild symptoms such as depressed mood and mild insomnia, some difficulty in social, occupational or school functioning; she was able to generally function pretty well and she had some meaningful interpersonal relationships. (Docket No. 5, Transcript pp. 25-26; 540-541).

However, by November 9, 2009, plaintiff experienced a deterioration in her mental condition and was referred for inpatient treatment due to suicidal and homicidal thoughts. (*Id.*, p. 26). Due to these mental condition deterioration and the additional exertional impairments discussed, the ALJ found plaintiff Ramírez-Alvarez disabled as of July 6, 2009, but not before.

## LEGAL ANALYSIS

The Court's review in this type of cases is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.

§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st

Cir. 1982). Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

The ALJ then proceeded to the fifth and final step of the process for a determination on whether Ramírez-Alvarez was able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The ALJ in the instant case followed said fifth step upon determining that plaintiff Ramírez-Alvarez was not under disability for being able to

perform, without limitations sedentary work that was simple, repetitive and without frequent contact with the public and occasional contact with co-workers and supervisors.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. <u>Santiago v. Secretary of Health and Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, plaintiff Ramírez-Alvarez was determined not able to perform her previous past relevant work prior to July 6, 2009 and was determined disabled thereafter.

In the memorandum of law, plaintiff submits, although not fully developed, coherent and cohesive arguments supporting the averment that the ALJ's determination was not supported by substantial evidence nor did he apply the correct legal standards.

On the other hand, the Commissioner's memorandum of law rebutted each one of plaintiff's underdeveloped arguments, stating the reasons why these cannot prosper. Succinctly, plaintiff argued the ALJ's proposed hypothetical questions to the vocational expert did not convey all of plaintiff's limitations but such was not the situation at bar. (Docket No. 20, Transcript, p. 12, ).

The Commissioner's memorandum, discusses that insofar as to plaintiff, the ALJ asked vocational expert Dr. Puig questions in regards to plaintiff's past relevant work as a receptionist, which regardless of a capacity for sedentary work would be precluded by plaintiff Ramírez-Alvarez' limitations as to having no contact with the public and a maximum occasional contact with supervisors and co-workers. (Docket No. 5, Transcript, p. 39). However, Dr. Puig indicated there were other jobs available, such as sorter or classifier, which were unskilled and sedentary, as well as inspector of finished products,

which were also sedentary and within her residual functional capacity. (*Id.*, p. 40). Only if plaintiff had less than sedentary residual functional capacity, she would be precluded from performing any kind of work. (*Id.*, p. 41).

The vocational expert, Dr. Puig, was also proposed questions by plaintiff's legal representation who added as limitations an inability to complete a normal workday without interruptions due to her psychological symptoms, not to accept instructions or criticism from supervisors, or changes in routine work. Upon the presence of such additional impairments, the vocation expert considered the individual dysfunctional and unable to perform any kind of work. (*Id.*, pp. 41-42).

An ALJ is entitled to rely on jobs identified by a vocational expert if the hypothetical questions presented clearly and accurately depicts plaintiff's work related limitations. Arocho v. Secretary of Health and Human Services, 670 F.2d 374 (1st Cir. 1982). The hypothetical questions objected by plaintiff's memorandum referred to the treating psychiatrist Dr. Malavé-Ortiz and the alleged ALJ's failure to give proper weight to same. Thus, plaintiff Ramírez-Alvarez' memorandum has also objected to the ALJ not giving proper weight to the opinion evidence of record as to the treating source.

A treating source's medical opinion is given controlling weight if it is not inconsistent with other substantial evidence contained in the record for the ALJ can reject or not give significant weight to same when it is inconsistent with other substantial evidence. The assessment of such inconsistencies in the medical evidence is one to be resolved by the Commissioner. As to plaintiff's treating source, Dr. Malavé-Ortiz' opinion that plaintiff was seriously limited and had psychomotor retardation it was also noted in the administrative

decision plaintiff is shown as alert, oriented in the three spheres and cooperative. Her thought content was described as coherent, relevant and logical, without homicidal or suicidal ideations, good judgment. Thus, the ALJ considered Dr. Malavé-Ortiz' conclusion as not supported by the record for which reason he did not include such limitations in the hypothetical questions proposed to the vocational expert. Furthermore, there was additional medical evidence that opposed Dr. Malavé-Ortiz' opinion, which were more keenly supported with proper medical signs, laboratory findings and progress notes of treatment and/or consultative medical assessment that contradicted Dr. Malavé-Ortiz. (Docket No. 5, Transcript pp. 615-621). The ALJ had the psychiatric consultative evaluation of Dr. Caro and the notes from San Juan Capestrano.[2] This Magistrate Judge considers above evidence supports the ALJ's determination and constitutes substantial evidence.

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

---

[2] There was additional medical evidence in regards with exertional limitations because of low back pain with radiculopathy, portal vein thrombosis, reduced range of motion and spondylosis, but these impairments are not disputed by the parties and the neurological evaluations would allow performance of only sedentary type of work. Dr. Andrés Gutierrez' reports. (Docket No. 5, Transcript pp. 604-612).

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[3] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

---

[3] Falu v. Secretary of Health & Human Servs., 703 F.2d 24 (1st Cir. 1983).

Ivette Ramírez-Alvarez v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2036 (CVR)
Page No. 12

     Based on the foregoing, this Magistrate Judge opines the decision of the Commissioner is supported by substantial evidence in that plaintiff Ramírez-Alvarez is disabled for disability purposes after July 6, 2009, but not before, considering plaintiff's mental condition and other exertional limitations, with the residual functional capacity for sedentary type of work and the jobs that were available in the national economy. As such, the decision of the Commissioner denying plaintiff's application for disability from alleged onset date up to July 6, 2009, is supported by substantial evidence.

## CONCLUSION

     For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record determines the Commissioner's decision is AFFIRMED.

     IT IS SO ORDERED.

     Judgment to be entered accordingly.

     In San Juan, Puerto Rico, on this 14th day of January of 2013.

                             S/CAMILLE L. VELEZ-RIVE
                             CAMILLE L. VELEZ RIVE
                             UNITED STATES MAGISTRATE JUDGE